[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12748
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00145-JES-CM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUINTON PAUL HANDLON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 10, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Law enforcement officers executed a search warrant at Quinton Handlon's

house.  Evidence from the search confirmed that Handlon had been producing

child pornography, with his minor niece as the subject. While Handlon was in custody, but before he had been read his <u>Miranda</u> rights, Detective Chris Tissot remarked to him that, for the previous week and a half, Handlon's emails to his niece had been going to an undercover agent. Handlon responded that he had known his niece had not been the one responding to the emails because the responses had not sounded like his niece's.

A grand jury indicted Handlon for producing child pornography, coercing and enticing a minor to produce child pornography, and possessing child pornography. Before his trial, Handlon moved to suppress evidence of his response to Tissot's remark. The district court denied his motion and a jury eventually convicted him of all charges. Handlon appeals his convictions on the ground that the district court erred by admitting evidence of his response to Tissot's remark.

We do not decide whether the district court erred in admitting evidence of Handlon's response because, either way, the evidence had no substantial effect on the trial's outcome. The only evidentiary value of Handlon's response to Tissot's remark was to show that Handlon owned and used the email address from which a number of incriminating emails had been sent. That fact, however, was overwhelmingly established by other uncontroverted evidence that the government presented at trial. Handlon's victim, his niece, testified that she communicated

2

with him using that email address and she had done so while in the same room as him. An FBI forensic examiner testified that she had discovered a cover letter and a resume from Handlon, both listing the same email address as his. Tissot testified that Handlon's employment application used that email address and data on Handlon's phone listed the address as his. Yahoo's records showed that the email address had been established in Handlon's name in 2002. By contrast, Handlon has not brought to our attention any evidence suggesting that anyone else owned or used the email address. On that record, the only reasonable conclusion a juror could draw is that emails from that particular email address came from Handlon. Because that is all Handlon's response to Tissot's remark evidenced, any error by the district court in admitting evidence of it was harmless and, therefore, not a basis for vacating Handlon's convictions. See Diveroli v. United States, 803 F.3d 1258, 1264–65 (11th Cir. 2015).

The district court imposed a life sentence on Handlon, which he appeals, arguing that the court did not consider certain factors listed in 18 U.S.C. § 3553(a) — including his lack of criminal history, his military service, his employment history, and his education level — before determining his sentence. But the district court did consider those factors; it mentioned each of them at sentencing. It may not have given them as much weight as Handlon wanted, but a district court has discretion about how much weight to assign a given sentencing factor, and that

includes discretion to give greater weight to factors it considers to be of special importance in a given case.  See United States v. Rosales-Bruno, 789 F.3d 1249, 1254 (11th Cir. 2015).  The record shows that is exactly what the district court did here.  Accordingly, the district court did not abuse its discretion in applying the § 3553(a) factors at Handlon's sentencing.

**AFFIRMED.**